NO. 24-1351

_____

**UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT**

_____

**In Re:**

**THRIVENT FINANCIAL FOR LUTHERANS AND
THRIVENT INVESTMENT MANAGEMENT INC.,**

*Petitioners.*

_____

On Petition for a Writ of Mandamus to the
United States Securities and Exchange Commission
File No. 4-781

_____

**PETITION FOR A WRIT OF MANDAMUS
(AGENCY ACTION UNREASONABLY DELAYED)**

_____

Andrew B. Kay
P. Randolph Seybold
VENABLE LLP
600 Massachusetts Avenue, NW
Washington, DC 20001
(202) 344-4000 (phone)
(202) 344-8300 (fax)
akay@venable.com
rseybold@venable.com

Richard T. Choi
Ann B. Furman
CARLTON FIELDS, P.A.
1025 Thomas Jefferson Street, NW
Washington, DC 20007
(202) 965-8100 (phone)
(202) 965-8104 (fax)
rchoi@carltonfields.com
afurman@carltonfields.com

*Attorneys for Petitioners Thrivent Financial for Lutherans
and Thrivent Investment Management Inc.*

October 31, 2024

# CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES

Pursuant to District of Columbia Circuit Rule 28(a)(1), counsel for Petitioners submit the following certification:

## A.      Parties and *Amici*

<u>Petitioners</u>: Thrivent Financial for Lutherans ("Thrivent") and Thrivent Investment Management Inc. ("TIMI").

<u>Respondent</u>: United States Securities and Exchange Commission ("SEC" or "Commission").

<u>Intervenors</u>: None.

*<u>Amici</u>*: None.

## B.      Ruling Under Review

None. The petition challenges the Commission's unreasonable delay in acting on Thrivent and TIMI's Petition for Rulemaking to Abrogate or Amend Financial Industry Regulatory Authority Rules 2268(d), 12200, and 12204(d) ("Rulemaking Petition"), submitted to the SEC on December 29, 2021.

## C.      Related Cases

Thrivent and TIMI previously petitioned this Court for a writ of mandamus compelling the SEC to act on their Rulemaking Petition in *In re Thrivent Financial for Lutherans, et al.*, Case No. 22-1296. The prior petition is attached hereto at A113-158. On January 23, 2023, the Court denied Thrivent and TIMI's petition for a writ

of mandamus "without prejudice to refiling in the event of significant additional delay." A159. There are no pending related cases.

## CIRCUIT RULE 26.1 DISCLOSURE STATEMENT OF THRIVENT FINANCIAL FOR LUTHERANS

Pursuant to Federal Rule of Appellate Procedure 26.1 and District of Columbia Circuit Rule 26.1, Petitioner Thrivent states that it is a fraternal benefit society organized and existing under the laws of the State of Wisconsin, that it has no parent company, and that no publicly held company has a 10% or greater ownership interest in it.

## CIRCUIT RULE 26.1 DISCLOSURE STATEMENT OF THRIVENT INVESTMENT MANAGEMENT INC.

Pursuant to Federal Rule of Appellate Procedure 26.1 and District of Columbia Circuit Rule 26.1, Petitioner TIMI states that it is a broker-dealer organized and existing under the laws of the State of Delaware, that it is wholly owned by Petitioner Thrivent, and that no publicly held company has a 10% or greater ownership interest in it.

# TABLE OF CONTENTS

                                                                        **Page**

TABLE OF CONTENTS ........................................................................ iii

TABLE OF AUTHORITIES ................................................................... v

GLOSSARY OF ABBREVIATIONS ................................................... viii

INTRODUCTION ................................................................................ 1

STATEMENT OF JURISDICTION AND VENUE ............................... 3

STATEMENT OF THE ISSUE PRESENTED ..................................... 3

STATUTES AND REGULATIONS ..................................................... 4

STATEMENT OF THE CASE .............................................................. 4

    A.    The Parties ..................................................................... 5

    B.    Thrivent and TIMI's Rulemaking Petition ........................... 6

    C.    Thrivent and TIMI's Prior Petition for a Writ of Mandamus and Subsequent Unanswered Communications to the SEC ........................ 7

    D.    Thrivent and TIMI Are Directly Harmed by the Unlawful Challenged FINRA Rules ..................................................... 8

    E.    The Commission Has, For Years, Avoided Adjudication of Its Authority to Allow Rules Prohibiting Private Mandatory Arbitration Agreements ...................................................... 11

    F.    The SEC Made Clear in Recent Third Circuit Proceedings That Only Court Compulsion Will Force It to Act on Rulemaking Petitions ........................................................ 15

SUMMARY OF ARGUMENT ............................................................ 16

STANDING ....................................................................................... 17

ARGUMENT ..................................................................................... 19

I.  A WRIT OF MANDAMUS IS WARRANTED AND NECESSARY TO COMPEL THE COMMISSION TO ACT ON THE PETITION WITHOUT FURTHER DELAY ...................... 19

    A.  Thrivent and TIMI Have Taken the Only Appropriate Approach to Addressing the Challenged FINRA Rules ........................... 20

    B.  The SEC Has Refused to Act on the Rulemaking Petition, Violating the APA and Thrivent and TIMI's Rights to Due Process ...................................................................................... 22

    C.  Indefinite Delay and An Agency's Refusal to Take Corrective Action Render Administrative Processes Inadequate ............... 25

    D.  The SEC's Multi-Year Delay Alone Violates the APA and Renders the Administrative Process Inadequate ...................... 28

    E.  The Immediate and Ongoing Harm to Thrivent and TIMI, and The Commission's Inability to Justify Further Delay, Counsel Issuance of a Writ of Mandamus .............................................. 29

    F.  The *TRAC* Factors Support Issuing a Writ of Mandamus to Compel the Commission to Act on the Petition ...................... 30

II.  AT A MINIMUM, THE COURT SHOULD RETAIN JURISDICTION ................................................................................. 33

CONCLUSION ...................................................................................... 34

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Aiken Cnty.*,
    645 F.3d 428 (D.C. Cir. 2011) ........................................................................24

*Alpine Sec. Corp. v. Fin. Indus. Regul. Auth.*,
    No. 2:20-cv-00794-DBB-DBP, 2021 WL 4060943 (D. Utah Sept.
    7, 2021) .............................................................................................................22

*Am. Hosp. Ass'n v. Burwell*,
    812 F.3d 183 (D.C. Cir. 2016) ........................................................................31

*In re Am. Rivers & Idaho Rivers United*,
    372 F.3d 413 (D.C. Cir. 2004) .............................................................28, 30, 31

*Ass'n of Inv. Brokers v. SEC*,
    676 F.2d 857 (D.C. Cir. 1982) ........................................................................22

*Boivin v. U.S. Airways, Inc.*,
    446 F.3d 148 (D.C. Cir. 2006) ........................................................................23

*Charles Schwab & Co. v. Fin. Indus. Regul. Auth. Inc.*,
    861 F. Supp. 2d 1063 (N.D. Cal. 2012) .....................................................20, 22

*In re Coinbase, Inc.*,
    3d Cir. Case No. 23-1779 ......................................................................15, 16, 34

*Coit Indep. Joint Venture v. FSLIC*,
    489 U.S. 561 (1989) ......................................................................................25, 26

*Epic Sys. Corp. v. Lewis*,
    584 U.S. 497 (2018) ...........................................................................................6

*Free Enter. Fund v. Public Co. Acct. Oversight Bd.*,
    561 U.S. 477 (2010) ......................................................................................21, 24

*Gibson v. Berryhill*,
    411 U.S. 564 (1973) ..........................................................................................26

*Hettinga v. United States*,
    560 F.3d 498 (D.C. Cir. 2009)..........................................................................23

*Humana of S.C., Inc. v. Califano*,
    590 F.2d 1070 (D.C. Cir. 1978)..............................................................26, 27

*Lujan v. Defs. of Wildlife*,
    504 U.S. 555 (1992).........................................................................................17

*Mathews v. Eldridge*,
    424 U.S. 319 (1976).........................................................................................24

*McCarthy v. Madigan*,
    503 U.S. 140 (1992).................................................................................23, 26

*MCI Telecomms. Corp. v. FCC*,
    627 F.2d 322 (D.C. Cir. 1980)........................................................................24

*McKart v. United States*,
    395 U.S. 185 (1969).........................................................................................22

*Muwekma Tribe v. Babbitt*,
    133 F. Supp. 2d 30 (D.D.C. 2000).................................................................24

*N.Y. Republican State Comm. v. SEC*,
    799 F.3d 1126 (D.C. Cir. 2015)......................................................................22

*Nat'l Res. Def. Council, Inc. v. U.S. Env't Prot. Agency*,
    956 F.3d 1134 (9th Cir. 2020) .......................................................................28

*Order of United Com. Travelers of Am. v. Wolfe*,
    331 U.S. 586 (1947)...........................................................................................9

*Rodriguez de Quijas v. Shearson/Am. Express, Inc.*,
    490 U.S. 477 (1989)...........................................................................................7

*Scottsdale Cap. Advisors Corp. v. Fin. Indus. Regul. Auth., Inc.*,
    844 F.3d 414 (4th Cir. 2016) ...................................................................21, 22

*Shearson/American Express, Inc. v. McMahon*,
    482 U.S. 220 (1987)...........................................................................2, 6, 11, 12

*Sierra Club v. Thomas*,
828 F.2d 783 (D.C. Cir. 1987)..........................................................30

*Smith v. Ill. Bell Tel. Co.*,
270 U.S. 587 (1926)..........................................................26

*Telecomms. Rsch. & Action Ctr. v. FCC*,
750 F.2d 70 (D.C. Cir. 1984)..........................................3, 30, 31, 33

*In re United Mine Workers of Am. Int'l Union*,
190 F.3d 545 (D.C. Cir. 1999)..........................................................33

*Walker v. S. Ry. Co.*,
385 U.S. 196 (1966)..........................................................26

*Woodford v. Ngo*,
548 U.S. 81 (2006)..........................................................23

**Statutes and Regulations**

Administrative Procedure Act

5 U.S.C. § 553(e) ..........................................................20

5 U.S.C. § 555(b) ..........................................................17, 28

5 U.S.C. § 702..........................................................3

Federal Arbitration Act (9 U.S.C. § 1 *et seq.*) ..........................................*passim*

Securities Act of 1933 (15 U.S.C. § 77a *et seq.*) ..........................7, 12, 32

Securities Exchange Act of 1934 (15 U.S.C. § 78a *et seq.*) ..........................*passim*

15 U.S.C. § 78o-3 ..........................................................6

15 U.S.C. § 78o(o) ..........................................................7

15 U.S.C. § 78y..........................................................3, 16

All Writs Act (28 U.S.C. § 1651(a)) ..........................................................3

17 C.F.R. § 201.192 ..........................................................20, 22, 24

# GLOSSARY OF ABBREVIATIONS

| | |
|---|---|
| A | Appendix |
| Add. | Statutory Addendum |
| APA | Administrative Procedure Act (5 U.S.C. § 551 *et seq.*) |
| *Coinbase* | *In re Coinbase, Inc.*, 3d Cir. Case No. 23-1779 |
| Commission or SEC | United States Securities and Exchange Commission |
| Challenged FINRA Rules | FINRA Rules 2268(d), 12200, and 12204(d), which unlawfully and impermissibly prohibit FINRA members from entering or enforcing private arbitration agreements mandating individual customer arbitration in a non-FINRA forum under private arbitration rules, which are the subject of Thrivent and TIMI's Petition for Rulemaking to Abrogate or Amend Financial Industry Regulatory Authority Rules 2268(d), 12200, and 12204(d) submitted to the Commission on December 29, 2021 |
| Exchange Act | Securities Exchange Act of 1934, as amended (15 U.S.C. § 78a *et seq.*) |
| FAA | Federal Arbitration Act (9 U.S.C. § 1 *et seq.*) |
| FINRA | Financial Industry Regulatory Authority, Inc. |
| MDRP | The Member Dispute Resolution Program, established in Thrivent's Bylaws and incorporated by state law in all Thrivent insurance product contracts, which includes a provision for mandatory individual arbitration of claims |
| Rulemaking Petition | The Petition for Rulemaking to Abrogate or Amend Financial Industry Regulatory Authority Rules |

| | |
|---|---|
| | 2268(d), 12200, and 12204(d) submitted by Thrivent and TIMI to the Commission on December 29, 2021 |
| Securities Act | Securities Act of 1933, as amended (15 U.S.C. § 77a *et seq.*) |
| Thrivent | Petitioner Thrivent Financial for Lutherans |
| TIMI | Petitioner Thrivent Investment Management Inc. |
| Variable Products | Variable annuity contracts and variable life insurance policies issued by Thrivent, sold by TIMI (and other broker-dealers, pursuant to selling agreements with Thrivent and TIMI), and subject to SEC and FINRA regulation |

## INTRODUCTION

This is the second time that Petitioners Thrivent and TIMI have sought mandamus relief from this Court in connection with this matter. Nearly two years ago, the Court denied Petitioners' first mandamus petition "without prejudice in the event of significant additional delay." But since then, nothing has happened; the SEC has not taken a single discernible step to act on a Rulemaking Petition that was filed almost three years ago. What is more, the SEC has made clear in other proceedings that it believes it has no legal obligation to act on *any* rulemaking petition unless and until a federal court enters a writ of mandamus compelling it to act. Without judicial intervention, the significant delay will continue.

Thrivent and TIMI therefore seek basic relief: a writ requiring the SEC simply to act on Thrivent and TIMI's pending Rulemaking Petition. There is no doubt that the SEC does not want to act on the Rulemaking Petition, because doing so would subject the Commission to judicial review in connection with an issue that it has avoided—not just for the past three years here, but for decades before that. Namely, the underlying rulemaking proceedings present a challenge to the SEC's (and FINRA's) longstanding policy prohibiting private agreements to arbitrate securities disputes in a non-FINRA forum. Pursuant to that policy, and under SEC authority, FINRA has promulgated and enforces rules that, the Rulemaking Petition contends, directly conflict with the FAA and harm Thrivent and TIMI.

Certainly, the SEC is concerned that its anti-arbitration policy conflicts with the FAA and is therefore unenforceable. Since 1987, when the Supreme Court decided *Shearson/American Express, Inc. v. McMahon*, 482 U.S. 220 (1987), the law has been clear that private agreements to arbitrate securities disputes are enforceable under the FAA. Indeed, after the Supreme Court decided *McMahon*, the SEC in 1987 withdrew as "no longer appropriate or accurate" a regulation that prohibited private agreements to arbitrate securities disputes between customers and broker-dealers. But ever since then, the SEC has maintained substantively indistinguishable anti-arbitration *policies*, both for itself and through FINRA Rules, while carefully avoiding any final agency action that might lead to judicial review of these policies. That is what is happening here with the SEC's nearly three-year delay. In refusing to rule on the Rulemaking Petition, the SEC is trying to avoid judicial review in a way that is incompatible with the APA and settled principles of due process.

The Exchange Act's requirement that parties must first go to the SEC in order to challenge agency action presumes that the SEC's administrative forum would adequately protect due process rights and provide meaningful access to relief. Here, Thrivent and TIMI are currently being harmed by FINRA rules—adopted with the SEC's imprimatur—and they are pursuing the only available procedure to challenge the rules' legality. A process that enables the SEC to deny any access to relief by

ignoring a party's rulemaking petition cannot possibly be adequate. The Court should issue a writ that requires the SEC to act on the Rulemaking Petition.

## STATEMENT OF JURISDICTION AND VENUE

This Court has jurisdiction under the APA, 5 U.S.C. § 702; *see also id.* at § 706(1), and the Court has authority to issue a writ of mandamus pursuant to the All Writs Act. 28 U.S.C. § 1651(a). The Court has exclusive jurisdiction to review any final decision by the Commission with respect to the Rulemaking Petition, 15 U.S.C. § 78y, so it also has jurisdiction to determine if the Commission's delay in acting with respect to the Rulemaking Petition is unreasonable. *Telecomms. Rsch. & Action Ctr. v. FCC*, 750 F.2d 70, 75 (D.C. Cir. 1984) ("*TRAC*").

Venue is proper because this Court is an appropriate venue for review of any final decision by the Commission with respect to the Rulemaking Petition under the Exchange Act, which provides that "[a] person aggrieved by a final order of the Commission entered pursuant to this chapter may obtain review of the order in the United States Court of Appeals for the circuit in which he resides or has his principal place of business, or for the District of Columbia Circuit." 15 U.S.C. § 78y(a)(1).

## STATEMENT OF THE ISSUE PRESENTED

Does the Commission's failure to issue a final decision regarding the Rulemaking Petition—which was submitted nearly three years ago to address a purely legal question the Commission has long been aware of and has avoided

3

subjecting to court adjudication—constitute an unreasonable delay warranting issuance of a writ of mandamus?

## STATUTES AND REGULATIONS

The relevant statutes and regulations are set forth in the Statutory Addendum.

## STATEMENT OF THE CASE

This mandamus petition implicates the SEC's authority under the federal securities laws to prohibit private agreements to resolve disputes in arbitration. That is a question the Commission has avoided addressing for years and is continuing to avoid here. The December 29, 2021, Rulemaking Petition puts this purely legal question squarely before the Commission, asserting that the Exchange Act does not give the SEC authority to approve the Challenged FINRA Rules—FINRA Rules 2268(d), 12200, and 12204(d)—that prohibit parties from agreeing to resolve disputes on an individual basis in a non-FINRA arbitral forum under private arbitration rules. Therefore, the Commission must abrogate or amend these Challenged FINRA Rules so that they are consistent with federal law.

The substantive questions raised in the Rulemaking Petition are not before this Court because the Commission refuses to act on the Rulemaking Petition. By refusing to act, the Commission harms Thrivent and TIMI because they are forced to comply with unlawful rules prohibiting the marketing or sale of duly-registered Variable Products that require disputes to be resolved through the MDRP, which

includes binding individual arbitration in a non-FINRA forum. The SEC has allowed these products to be registered, yet the Challenged FINRA Rules bar Thrivent and TIMI from selling them.

## A.  The Parties

Petitioner Thrivent is a fraternal benefit society, which is a special type of non-profit organization that provides insurance and other benefits to its members. As a fraternal benefit society, Thrivent is owned and governed by its members. Thrivent sells insurance products, such as life insurance and annuities, only to persons who already are Thrivent members or who become members at the time they purchase a Thrivent insurance product. Variable Products are Thrivent insurance products that are also securities registered with the Commission under the Securities Act of 1933, 15 U.S.C. § 77a *et seq*.

Petitioner TIMI is an SEC-registered broker-dealer under the Exchange Act and a member of FINRA. TIMI is a wholly-owned subsidiary of Thrivent. TIMI, through its registered representatives, sells Thrivent's insurance products (including Variable Products) on Thrivent's behalf only to Thrivent members and individuals who become Thrivent members upon the purchase of a Thrivent insurance product. Other broker-dealers, pursuant to selling agreements with Thrivent and TIMI (which is the principal underwriter for Variable Products), also operate on Thrivent's behalf by selling Variable Products to Thrivent members; however, TIMI is responsible for

nearly all sales of Variable Products. TIMI and others acting on Thrivent's behalf to sell Variable Products are licensed insurance producers appointed by Thrivent, and accordingly they are agents of Thrivent within the ambit of the MDRP.

Respondent SEC is an independent agency of the United States government, created by the Exchange Act, which has responsibility for enforcing federal securities laws and which is responsible for overseeing and approving rules promulgated by FINRA, a self-regulatory organization created pursuant to the Exchange Act (15 U.S.C. § 78o-3) that regulates member broker-dealers.

## B.    Thrivent and TIMI's Rulemaking Petition

On December 29, 2021, Thrivent and TIMI submitted the Rulemaking Petition, calling for abrogation or amendment of FINRA Rules 2268(d), 12200, and 12204(d) that, taken together, prohibit FINRA members from entering or enforcing private arbitration agreements mandating individual customer arbitration in a non-FINRA forum under private arbitration rules.

The Rulemaking Petition explains that the Challenged FINRA Rules violate the FAA and are unlawful and invalid because agreements to arbitrate can be limited or prohibited only where Congress's intention to supersede the FAA is "clear and manifest." A44-112; *Epic Sys. Corp. v. Lewis*, 584 U.S. 497, 510 (2018). Neither the Commission nor FINRA have such "clear and manifest" authority. *McMahon*, 482 U.S. at 238 (the Exchange Act does not reflect congressional intent to override the

FAA); *see also Rodriguez de Quijas v. Shearson/Am. Express, Inc.*, 490 U.S. 477, 482-83 (1989) (the Securities Act does not override the FAA).[1]

## C. Thrivent and TIMI's Prior Petition for a Writ of Mandamus and Subsequent Unanswered Communications to the SEC

After hearing nothing from the SEC for nearly a year, on November 18, 2022, Thrivent and TIMI petitioned this Court for a writ of mandamus compelling the Commission to act on the Rulemaking Petition. Without requiring any briefing, this Court denied the petition for a writ of mandamus on January 23, 2023, but did so "without prejudice to refiling in the event of significant additional delay." A159.

Then, on February 16, 2023, Thrivent and TIMI sent a letter to the SEC's Office of General Counsel, acknowledging the Court's denial of the mandamus petition and seeking to "discuss how the Commission plans to move forward with its consideration of [the Rulemaking Petition], and to avoid significant additional delay." A160. The SEC did not respond. On July 28, 2023, Thrivent and TIMI sent another letter to the SEC's Office of General Counsel, explaining that "in nearly nineteen months since the Rulemaking Petition was filed we have heard nothing from the Commission or its Staff beyond a form acknowledgement of receipt" and

---

[1] In 2010, the Dodd-Frank Wall Street Reform and Consumer Protection Act included an amendment to the Exchange Act, 15 U.S.C. § 78o(o), providing the Commission with authority to prohibit or impose conditions or limitations on some arbitration agreements, but the Commission only can do so "by rule"—meaning by following rulemaking procedural requirements under the APA. The Commission has undertaken no such rulemaking.

that "the lack of response to [the] letter from nearly five months ago, and the Commission's continued silence with respect to the Rulemaking Petition submitted more than a year and a half ago, suggests that significant additional delay is inevitable." A238. Thrivent and TIMI emphasized their preference to "engag[e] in a dialogue with the Commission regarding a timetable by which the Commission will address the Rulemaking Petition, rather than continued silence and additional delay that necessitates another mandamus petition" and again requested "an opportunity to discuss whether, how, and when the Commission plans to move forward with its consideration of our Rulemaking Petition." A239.

Once again, the SEC failed to respond. Indeed, Thrivent and TIMI have heard nothing regarding *any* SEC action with respect to the Rulemaking Petition.

## D. Thrivent and TIMI Are Directly Harmed by the Unlawful Challenged FINRA Rules

The Rulemaking Petition addresses the direct and ongoing harm caused to Thrivent and TIMI by having to comply with the unlawful Challenged FINRA Rules preventing the sale of duly-registered Variable Products applying the MDRP.

In short, Thrivent adopted the MDRP as part of its Bylaws over twenty-five years ago. The MDRP establishes a process for addressing disputes between Thrivent or its agents (including TIMI) on the one hand and Thrivent members on the other, that is designed to fairly and promptly address such disputes while maintaining, to the greatest extent possible, the bonds of membership. That process

concludes, when necessary, with mandatory and binding individual arbitration consistent with the FAA, with the forum costs borne by Thrivent.[2] Thrivent's Bylaws, including the MDRP provision, are required under every state's law to be part of the terms of all of Thrivent's insurance product contracts, including the Variable Products, and thus apply equally and uniformly to all Thrivent members.

As a member-owned-and-governed fraternal benefit society, uniformity of member rights and obligations is a core principle of Thrivent's governance structure. The importance of such uniformity to a fraternal benefit society's governance has been recognized judicially for more than a century, including by the Supreme Court.

> The relationships between the members of such societies are contractual in that they are voluntarily undertaken in consideration of the like obligations of others. However, interwoven with their financial rights and obligations, they have other common interests incidental to their memberships, which give them a status toward one another that involves more mutuality of interest and more interdependence than arises from purely business and financial relationships.

*Order of United Com. Travelers of Am. v. Wolfe*, 331 U.S. 586, 605-06 (1947).

The Challenged FINRA Rules impede that uniformity because they require Thrivent to address disputes with some of its members differently than with others, depending on whether the dispute arises with respect to one of Thrivent's traditional insurance products (subject to mandatory MDRP) or a Variable Product (for which

---

[2] Section 11 of Thrivent's Bylaws sets forth the MDRP, which applies to disputes arising between Thrivent members or beneficiaries and Thrivent "or its directors, officers, agents or employees." A89-90.

the Challenged FINRA Rules prohibit mandatory application of MDRP). A78-80. To address this disparity, Thrivent has begun to amend its SEC registration statements to make clear that MDRP is mandatory for its securities products in addition to its traditional insurance products. Thrivent also intends to expressly disclose mandatory MDRP in the registration statements for future securities products (although it bears noting that Thrivent members all agree to be bound by MDRP as a condition of becoming members, which is a precondition for purchasing any Thrivent traditional insurance product or Variable Product).

To date, Thrivent has two SEC-registered Variable Products that expressly disclose and apply mandatory MDRP—an AdvisorFlex Variable Annuity contract, the SEC registration for which became effective on October 12, 2020, and the Single Premium Immediate Variable Annuity contract, the SEC registration for which became effective on April 30, 2022. However, the Challenged FINRA Rules prohibit TIMI and other broker-dealers from selling any Variable Products that include and apply mandatory MDRP. And the SEC's refusal to act on the Rulemaking Petition effectively precludes Thrivent and TIMI from obtaining an adjudication regarding the lawfulness of the Challenged FINRA Rules.[3]

---

[3] Allowing the SEC to continue to take this approach has consequences that extend beyond Thrivent and TIMI or the specific legal issues raised in the Rulemaking Petition. Indeed, the Commission's refusal to act has provoked broader industry concern. On August 14, 2023, the Insured Retirement Institute ("IRI")—"the leading association for the entire supply chain of insured retirement strategies, including life

**E.    The Commission Has, For Years, Avoided Adjudication of Its Authority to Allow Rules Prohibiting Private Mandatory Arbitration Agreements**

For more than thirty-seven years, since the Supreme Court's 1987 *McMahon* decision, the Commission has been aware that it does not have authority to supersede the FAA by allowing FINRA to promulgate and enforce rules prohibiting arbitration provisions like the MDRP. Indeed, after *McMahon* was decided, the Commission in 1987 rescinded Exchange Act Rule 15c2-2 that prohibited broker-dealers from using mandatory arbitration clauses in customer agreements. Rule 15c2-2 had been adopted in 1983. A1-8. In rescinding it just four years later, the Commission recognized that the rule was "no longer appropriate or accurate" in light of *McMahon*'s holding that "predispute agreements to arbitrate claims arising under the Securities Exchange Act of 1934 are enforceable." A9-11.

In short, by rescinding Exchange Act Rule 15c2-2 in 1987, the SEC acknowledged that it *does not have the authority* to prohibit private arbitration provisions in customer agreements with broker-dealers. The Commission similarly recognized that *McMahon* raised questions about whether it could continue to preclude private agreements to arbitrate disputes arising under section 12(2) of the

---

insurers, asset managers, broker-dealers, banks, marketing organizations, law firms, and solution providers," of which Thrivent is a member—filed a comment letter to the Rulemaking Petition. A240-241. IRI's comment letter asserted that "simply ignoring a legitimate request such as [the Rulemaking Petition] should never be an option … It is well past time for the SEC to respond to Thrivent and TIMI's request." A241.

Securities Act of 1933, in connection with securities products. A9. Nevertheless, in the ensuing years the Commission perpetuated an unwritten policy disfavoring mandatory predispute arbitration provisions in securities products.[4] And the Commission allowed FINRA to do what the Commission itself acknowledged that it does not have the authority to do: promulgate and enforce the Challenged FINRA Rules that prohibit private arbitration provisions in customer agreements with broker-dealers. For this reason, among others, Thrivent and TIMI's Rulemaking Petition asserts that the Commission must abrogate or amend these Challenged FINRA Rules so that they are consistent with federal law.

Throughout the decades since the Commission (1) rescinded a formal rule prohibiting private agreements to arbitrate securities disputes because that rule was inconsistent with Supreme Court precedent, and (2) concurrently adopted an informal policy that similarly prohibited private agreements to arbitrate securities disputes, the Commission has avoided taking any final action that would subject this policy to judicial review.

In February 2019, then-Commission Chairman Jay Clayton confirmed that on

---

[4] While the Commission's statements and actions have primarily occurred in the context of the Securities Act—in part because the Challenged FINRA Rules have prevented the issue from surfacing in the context of the Exchange Act—in rescinding Rule 15c2-2 after *McMahon*, the Commission acknowledged that the question of its authority is the same under both the Securities Act and Exchange Act. A9.

"various occasions" he received inquiries as to whether mandatory arbitration clauses in the governing documents of entities regulated by the Commission would prevent registration statements from being declared effective. A42-43. Chairman Clayton confirmed that SEC staff have been reviewing this issue since at least 2012 and stated that he "agree[d] with the approach taken by the staff to not address the legality of mandatory shareholder arbitration in the context of federal securities laws …." (*Id.*) Of course, "not address[ing] the legality" of mandatory arbitration provisions means that the Commission has avoided taking agency action that would be subject to judicial review. The SEC has consistently taken this approach. As just two examples:

1) In 2012, when The Carlyle Group, L.P. attempted to amend its limited partnership agreement to require individual arbitration of disputes, including disputes arising under the federal securities laws, the SEC staff stated it likely would not "accelerate the effective date of [The Carlyle Group's] registration statement if [The Carlyle Group's] limited partnership agreement includes such a provision." A12. By declining to accelerate the effective date of The Carlyle Group's registration statement but not rejecting it, the Commission impeded the implementation of an arbitration agreement without engaging in final agency action that might be reviewable. The Carlyle Group removed the arbitration provision to

avoid delaying its initial public offering. A12-21; *see also* A22-25.

2)  In 2018, a Johnson & Johnson shareholder tried to include in proxy materials a proposal requiring a shareholder vote on whether Johnson & Johnson would adopt a mandatory arbitration bylaw. A27-28. In a December 11, 2018 letter to the SEC Division of Corporation Finance, Johnson & Johnson noted that "[t]he [SEC] Staff has long taken the view that including arbitration clauses in the governing documents of U.S. public companies is contrary to public policy." A30. The SEC responded that "Chairman Clayton has stated that questions regarding the federal legality or regulatory implications of mandatory arbitration provisions relating to claims arising under the federal securities laws should be addressed by the Commission in a measured and deliberative manner," and agreed to take no action if Johnson & Johnson excluded the shareholder's proposal from its proxy materials. A41. In so doing, the Commission headed off the possibility that a mandatory arbitration bylaw would be added, which then would have forced the Commission to address its authority to maintain its anti-arbitration policy and subjected that policy to judicial review.

These and other examples show that, when confronted with an issue that implicates the SEC's lack of authority to maintain its anti-arbitration policy, the Commission

disfavors arbitration provisions while it avoids taking any reviewable action that addresses whether it has such authority.

## F. The SEC Made Clear in Recent Third Circuit Proceedings That Only Court Compulsion Will Force It to Act on Rulemaking Petitions

In other proceedings, the Commission recently has made clear its position that the statutory requirement to act on a rulemaking petition "within a reasonable time" does not actually impose any meaningful obligation on the Commission. Specifically, in *In re Coinbase, Inc.*, 3d Cir. Case No. 23-1779, the Commission took the position that it will not act on a rulemaking petition until a party seeks mandamus relief and a court orders a response.

Coinbase petitioned the Commission to undertake rulemaking with respect to cryptocurrency regulation. A161-191. After nine months of SEC inaction on their rulemaking petition and efforts at engagement, Coinbase sought a writ of mandamus from the Third Circuit. A180.

In response, the SEC argued that "[t]here are no statutory or regulatory deadlines requiring the Commission to take action on the petition on a specific timeline" and that the Commission "is entitled to considerable deference." A207; A210. The Commission further suggested that the only deadline is that which might be imposed by courts through writs of mandamus, and then only if the Commission delays action for many years. A210-212; A212 n.8. The Commission repeated this position in a subsequent letter filing. A234-236. Additionally, the Commission

stated that if Coinbase was dissatisfied with the Commission's slow progress on its rulemaking petition, Coinbase could obtain "judicial scrutiny" of the Commission's positions through filings in the enforcement action the Commission had brought against Coinbase. A214; A233.

The Commission's actions with respect to the Rulemaking Petition here confirm its position taken in *In re Coinbase*: it will not act until this Court intervenes. Specifically, after Thrivent and TIMI's initial petition for a writ of mandamus was denied without briefing (but also "without prejudice to refiling in the event of significant additional delay," A159), the Commission has refused to respond to Thrivent and TIMI's subsequent efforts to engage with respect to the Rulemaking Petition in order to head off "significant additional delay." A160; A238-239.

## SUMMARY OF ARGUMENT

The Exchange Act required Thrivent and TIMI first to obtain a final decision from the Commission rather than allowing them to go directly to court for a determination that the Challenged FINRA Rules are unlawful. 15 U.S.C. § 78y. In depriving SEC-regulated entities of immediate access to court, Congress did not intend to preclude them from adjudication, nor to deprive them of their rights to due process. Rather, a foundational premise of the administrative exhaustion requirement is that the SEC's administrative forum adequately protects parties' rights and provides meaningful access to relief. That premise is subverted here:

Thrivent and TIMI are compelled to petition the Commission for relief, but the Commission escapes accountability simply by ignoring that petition. The Commission's inaction demonstrates how easily an agency can misuse, to its own benefit, the administrative exhaustion requirement.

The consequences of the Commission's inaction are particularly concerning here, where the substance of the Rulemaking Petition is a direct challenge to the Commission's legal authority. There is no resource justification for the Commission's delay because the Rulemaking Petition addresses a purely legal issue that has been acknowledged and considered by the Commission for decades. Instead, it appears that the Commission is merely continuing its longstanding practice of avoiding judicial review of whether the Commission's anti-arbitration practices are contrary to the FAA. Further, the Commission appears to believe it never has to respond to rulemaking petitions unless and until a court orders the Commission to do so—a position directly at odds with the APA requirement that the Commission act "within a reasonable time." 5 U.S.C. § 555(b). Under these circumstances, the Court should do exactly that: order the Commission to act.

## STANDING

The three elements to establish standing are: (i) "injury in fact" that is (ii) fairly traceable to the defendant's conduct and (iii) likely to be "redressed by a favorable decision." *See Lujan v. Defs. Of Wildlife*, 504 U.S. 555, 560-61 (1992).

Thrivent and TIMI meet all three elements with respect to both their request that the Court issue a writ of mandamus and the merits of their Petition.

The Commission's inaction on Thrivent and TIMI's Petition directly causes harm to Thrivent and TIMI by depriving them of an adequate forum to address unlawful rules sponsored by the Commission and robbing them of their due process right to have their claim of unlawful FINRA rules adjudicated. On the merits, Thrivent and TIMI also suffer concrete and ongoing harm caused by the Commission, which approved and has oversight responsibility for the unlawful FINRA Rules that prevent Thrivent and TIMI from selling duly-registered Variable Products that incorporate and apply Thrivent's MDRP Bylaw.

Issuance of a writ of mandamus compelling the Commission to act on the Rulemaking Petition will resolve the violation of procedural and due process rights caused by the Commission's inaction. And a favorable adjudication on the merits of the Rulemaking Petition by the Commission (or on appeal to this Court, if necessary), will resolve the ongoing harm imposed on Thrivent and TIMI, who presently must comply with the unlawful Challenged FINRA Rules to the detriment of Thrivent's members and Thrivent and TIMI's business interests.

**ARGUMENT**

## I. A WRIT OF MANDAMUS IS WARRANTED AND NECESSARY TO COMPEL THE COMMISSION TO ACT ON THE PETITION WITHOUT FURTHER DELAY

Filing the Rulemaking Petition was the only means for Thrivent and TIMI to address the unlawful and invalid Challenged FINRA Rules without subjecting themselves to an enforcement action. The SEC is required by statute to respond to the Rulemaking Petition in a reasonable time. This command—if faithfully adhered to by the Commission—ensures that the congressionally-prescribed administrative remedy, which precludes Thrivent and TIMI from otherwise seeking declaratory relief in district court, is an adequate one that protects their due process rights. But here, the Commission, through its silence and inaction, has made clear that it has no intention to respond to the Rulemaking Petition. Instead, the Commission means to use the administrative exhaustion requirement in order to avoid addressing the legal issue presented by the Petition and continue to insulate itself from any judicial review of its own longstanding but unwritten policy against private arbitration agreements in securities products, and its sponsoring of FINRA Rules accomplishing the same unlawful objectives with respect to private arbitration agreements between broker-dealers and their customers.[5] The administrative exhaustion requirement

---

[5] We repeat here, because it bears repeating, that in rescinding Exchange Act Rule 15c2-2 in 1987, the Commission acknowledged that it does not have legal authority to maintain a policy against private arbitration agreements, nor can the Commission

19

cannot—and was never intended to—shield agencies from judicial review. Accordingly, the Court should grant a writ of mandamus so that Thrivent and TIMI will have an adequate means of administrative redress and judicial review.

### A. Thrivent and TIMI Have Taken the Only Appropriate Approach to Addressing the Challenged FINRA Rules

Both the APA and the SEC Rules of Practice establish that Thrivent and TIMI can challenge the validity of the Challenged FINRA Rules through a petition under SEC Rule of Practice 192. The APA gives "an interested person the right to petition for the issuance, amendment, or repeal of a rule" and Rule 192 provides that "[a]ny person desiring the issuance, amendment or repeal of a rule of general application may file a petition therefor with the [Commission] Secretary." 5 U.S.C. § 553(e); 17 C.F.R. § 201.192. Thrivent and TIMI must then await the Commission's decision on the merits of their Petition before they can go to court.

In the absence of this administrative exhaustion requirement specified by Congress in the Exchange Act, Thrivent and TIMI could have proceeded directly to federal court for a declaration that the Challenged FINRA Rules are unlawful. *See, e.g.*, *Charles Schwab & Co. v. Fin. Indus. Regul. Auth. Inc.*, 861 F. Supp. 2d 1063, 1069 (N.D. Cal. 2012) (granting FINRA motion to dismiss Schwab's action seeking

---

allow FINRA, under the Commission's authority, to promulgate and enforce rules to accomplish the same unlawful objective. It therefore is not surprising that the Commission has taken pains to avoid adjudication of this issue.

declaration that Challenged FINRA Rule 2268(d) was unlawful based on Schwab's failure to exhaust administrative remedies). Indeed, if Thrivent and TIMI had been able to file a complaint in federal court rather than submitting their Rulemaking Petition to the SEC, they certainly would have obtained more prompt consideration by the SEC of the legal arguments underlying the Rulemaking Petition—the SEC would have had to answer their complaint in court years ago. By now, nearly three years later, a Thrivent and TIMI complaint seeking declaratory relief almost certainly would have been decided by a federal district court.

The only other option available to parties like Thrivent and TIMI who are challenging unlawful federal rules and regulations is to intentionally violate the rules and subject themselves to an enforcement action, in the course of which they can challenge the rules' validity. But requiring Thrivent and TIMI to take that approach is inconsistent with due process and places Thrivent and TIMI in a situation that the Supreme Court has expressly recognized parties should not be forced to confront. *See, e.g.*, *Free Enter. Fund v. Public Co. Acct. Oversight Bd.*, 561 U.S. 477, 490 (2010) ("We normally do not require plaintiffs to bet the farm … by taking the violative action before testing the validity of the law." (internal quotations omitted)).[6]

---

[6] Federal courts have repeatedly held that a party may use the rulemaking petition process to challenge the validity of SEC or FINRA rules, rather than requiring such parties to first subject themselves to an enforcement action. *See, e.g.*, *Scottsdale Cap.*

## B. The SEC Has Refused to Act on the Rulemaking Petition, Violating the APA and Thrivent and TIMI's Rights to Due Process

Thrivent and TIMI are in limbo, having taken the appropriate administrative course to challenge unlawful FINRA rules, but finding themselves unable to proceed (after nearly three years of waiting) unless and until the Commission acts on the Rulemaking Petition.

To be sure, there are numerous justifications supporting a congressional determination that administrative exhaustion should be required. *See, e.g., McKart v. United States*, 395 U.S. 185, 193-95 (1969) (explaining that notions of judicial

---

*Advisors Corp. v. Fin. Indus. Regul. Auth., Inc.*, 844 F.3d 414, 423 (4th Cir. 2016) ("Scottsdale is not required to challenge a [FINRA] Board rule at random or bet the farm by voluntarily incurring a sanction in order to trigger § 78y's mechanism for administrative and judicial review" but instead can "petition the SEC—apart from any disciplinary action—to amend or repeal [the] FINRA Rule." (internal quotations omitted)); *N.Y. Republican State Comm. v. SEC*, 799 F.3d 1126, 1136 (D.C. Cir. 2015) (holding that the APA and Rule 192 provide the right to "petition for the amendment or repeal of any Commission rule" and "[i]f the Commission denies an individual's petition, she may then petition this court for review of the Commission's decision to deny the petition."); *Ass'n of Inv. Brokers v. SEC*, 676 F.2d 857, 864 (D.C. Cir. 1982) ("As the SEC points out, however, both the Administrative Procedure Act and the Securities Exchange Act indicate an avenue petitioners might pursue to raise before the Commission their contentions concerning the alleged illegality of NYSE-style arbitration . . . Petitioners may invite an SEC rulemaking directed to the arbitration requirements of the self-regulatory organizations." (internal quotations omitted)); *Alpine Sec. Corp. v. Fin. Indus. Regul. Auth.*, No. 2:20-cv-00794-DBB-DBP, 2021 WL 4060943, at *5 (D. Utah Sept. 7, 2021) ("Alpine also has the additional avenue of petitioning the SEC to repeal the Amendment outside of the disciplinary proceeding."); *Schwab*, 861 F.Supp.2d at 1076 n.1 ("Plaintiff could also petition the SEC to change the FINRA Rule at issue in light of the recent Supreme Court decisions construing the FAA, which the SEC has the power to do.").

efficiency and administrative autonomy, as well as an agency's application of particular expertise are bases for requiring exhaustion of administrative remedies); *McCarthy v. Madigan*, 503 U.S. 140, 145 (1992) (same); *Boivin v. U.S. Airways, Inc.*, 446 F.3d 148, 155-56 (D.C. Cir. 2006) (same). Indeed, among the reasons the Supreme Court has stated for requiring exhaustion is that "exhaustion promotes efficiency [because] [c]laims generally can be resolved much more quickly and economically in proceedings before an agency than in litigation in federal court." *Woodford v. Ngo*, 548 U.S. 81, 89 (2006).

But this framework presupposes that the agency does *something*—it must act on a rulemaking petition—and not that the agency uses the administrative exhaustion requirement as a license to not act. Where—like here—an agency can indefinitely halt its proceedings by simply ignoring a rulemaking petition, it turns the rationale for requiring exhaustion of administrative remedies on its head. It is thus a fundamental principle underlying the administrative exhaustion requirement that if an aggrieved party must first proceed through an agency's procedures before getting its day in court, such procedures must be capable of providing the requested relief and must be adequate to protect the party's due process rights. *See McCarthy*, 503 U.S. at 146-49; *Hettinga v. United States*, 560 F.3d 498, 506 (D.C. Cir. 2009) (analyzing *McCarthy*). "The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'"

*Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)). To that end, an agency's mandatory administrative process must provide parties with "a meaningful avenue of relief" and not a hollow one. *See, e.g.*, *Free Enter. Fund*, 561 U.S. at 490-91.

By simply refusing to act on the Rulemaking Petition presented, the Commission has rendered the rulemaking petition process prescribed by the APA and Rule 192 wholly inadequate and meaningless. *See, e.g.*, *Muwekma Tribe v. Babbitt*, 133 F. Supp. 2d 30, 37 (D.D.C. 2000) (explaining, in the context of mandamus proceedings addressing unreasonable agency delay, that "'[t]here comes a point when relegating issues to proceedings that go on without conclusion in any kind of reasonable time frame is tantamount to refusing to address the issues at all— and the result is a denial of justice,'" quoting *MCI Telecomms. Corp. v. FCC*, 627 F.2d 322, 344 (D.C. Cir. 1980)). Put simply, the Court must "not permit [the Commission] to insulate itself from judicial review by refusing to act." *In re Aiken Cnty.*, 645 F.3d 428, 436 (D.C. Cir. 2011). Because fundamental tenets underlying the administrative exhaustion requirement, including due process concerns, demand that the administrative process be adequate to afford an aggrieved party relief, the APA by its terms does not allow the Commission to take the position it is taking currently: namely, that it can delay action as long as it wants, and unless and until a court issues a writ of mandamus compelling it to act.

Moreover, in this case the Commission's failure to act on the Rulemaking Petition is particularly egregious because the Petition challenges the Commission's own legal authority. The Commission thus has left Thrivent and TIMI without *any* administrative mechanism to challenge unlawful rules promulgated by the Commission or its proxies, including FINRA.

## C. Indefinite Delay and An Agency's Refusal to Take Corrective Action Render Administrative Processes Inadequate

The law is clear that a prescribed administrative process is inadequate if indefinite delay or an agency's refusal to take action prevent a party from having its claims addressed.

For example, in *Coit Indep. Joint Venture v. FSLIC*, 489 U.S. 561 (1989), the Supreme Court rejected as inadequate a required administrative process that would have allowed a federal agency to indefinitely delay judicial review and adjudication until statutes of limitation had expired. Specifically, the Supreme Court addressed whether Congress granted the Federal Savings and Loan Insurance Corporation (FSLIC), as receiver, exclusive authority to adjudicate the state law claims asserted against a failed savings and loan association. As part of its analysis, the Supreme Court addressed FSLIC's argument that a creditor's lawsuit against a failed S&L should be dismissed because the creditor had not exhausted the administrative claims

procedure established by the Federal Home Loan Bank Board before filing suit. *Id.* at 583-87.

The Supreme Court rejected this argument, holding that the FSLIC's administrative procedure could not stand in the way of creditors' efforts to have their claims addressed. The Court reasoned that "[t]he lack of a reasonable time limit in the current [FSLIC] administrative claims procedure renders it inadequate for several reasons," including because it "allows FSLIC to delay the administrative processing of claims indefinitely, denying a litigant its day in court, while the statute of limitations runs" and it "may enable FSLIC to coerce claimants to enter into unfair settlements by virtue of the fact that the receiver's assets may be depleted by interim distributions to other claimants by the time a claimant finally has access to the courts." *Id.* at 587. The Supreme Court thus rejected as inadequate an administrative claims procedure whereby FSLIC was attempting to use delay tactics to preclude access to judicial review.[7]

Similarly, this Court has held an administrative process inadequate where, as here, it would have afforded a litigant no viable path to relief. *See Humana of S.C.,*

_____

[7] In a concurring opinion in *McCarthy*, Chief Justice Rehnquist cited *Coit* for the principle that "when a plaintiff might have to wait seemingly forever for an agency decision, agency procedures are 'inadequate' and therefore need not be exhausted." *McCarthy*, 503 U.S. at 157. *See also Gibson v. Berryhill*, 411 U.S. 564, 575, n.14 (1973); *Walker v. S. Ry. Co.*, 385 U.S. 196, 198 (1966); *Smith v. Ill. Bell Tel. Co.*, 270 U.S. 587, 591-92 (1926).

*Inc. v. Califano*, 590 F.2d 1070 (D.C. Cir. 1978). In *Califano*, the plaintiff pursued a lawsuit in federal district court that included, among other things, a challenge to a regulation promulgated by the Secretary of Health, Education, and Welfare on the basis that the regulation had not been properly promulgated under required APA procedures. This Court, after recognizing that it is "elementary that the exhaustion doctrine contemplates an efficacious administrative remedy," noted that such remedy was not available in connection with the plaintiff's APA claim: "Consideration by the Provider Reimbursement Review Board, confined as it is to disputes over the amount properly reimbursable, is unavailable with respect to procedural contentions of the sort here advanced, and the Secretary [of Health, Education, and Welfare] has not adduced an alternative avenue of redress." *Id*. at 1081 (cleaned up). Because the administrative process did not provide the plaintiff any possibility of adequate relief, the Court accordingly rejected the Secretary's argument that administrative exhaustion of the APA claim was required. *See id.*

These cases parallel closely Thrivent and TIMI's predicament, where they can obtain no relief through an administrative process because the Commission refuses to proceed. The Commission has demonstrated by its inaction that it has no intention of proceeding, and that the only way the Rulemaking Petition will be ruled upon is if this Court order the Commission to do so.

**D.    The SEC's Multi-Year Delay Alone Violates the APA and Renders the Administrative Process Inadequate**

While the Exchange Act does not provide a specific timeline for the Commission to act on a rulemaking petition, that does not mean (as the Commission would have it) that there is *no* deadline to act. Instead, the APA requires the Commission to act—whether by granting or denying the requested relief—"within a reasonable time." 5 U.S.C. § 555(b) ("With due regard for the convenience and necessity of the parties or their representatives and within a reasonable time, each agency shall proceed to conclude a matter presented to it."). And this Court has held that a "reasonable time" in which a federal agency must respond to a rulemaking petition by either granting or denying relief "is typically counted in weeks or months, not years." *In re Am. Rivers & Idaho Rivers United*, 372 F.3d 413, 419 (D.C. Cir. 2004).[8]

These safeguards help ensure that the congressionally-required administrative process will be an adequate one, and provide parties like Thrivent and TIMI with due process protections such that their claims will actually be addressed. Yet as of the date of this Petition for a Writ of Mandamus, almost three years have elapsed since the Rulemaking Petition was submitted, with no apparent action by the

---

[8] *See also Nat'l Res. Def. Council, Inc. v. U.S. Env't Prot. Agency*, 956 F.3d 1134, 1139 (9th Cir. 2020) ("Repeatedly, courts in this and other circuits have concluded that a reasonable time for agency action is typically counted in weeks or months, not years." (internal quotations and citation omitted)).

Commission in sight. Plainly, that is not the adequate administrative remedy that Congress intended.

### E.     The Immediate and Ongoing Harm to Thrivent and TIMI, and The Commission's Inability to Justify Further Delay, Counsel Issuance of a Writ of Mandamus

The issues presented in the Rulemaking Petition further emphasize the need for prompt action by the Commission. The Petition identifies specific FINRA Rules that are *unlawful* and that cause *immediate and ongoing harm* to Thrivent, TIMI, and Thrivent members. Thrivent and TIMI have SEC-registered insurance products they cannot sell without violating the Challenged FINRA Rules. Moreover, Thrivent and TIMI's rights are violated, and Thrivent's members are harmed, so long as Thrivent and TIMI are subject to the unlawful Challenged FINRA Rules preventing uniform and consistent application of Thrivent's Bylaws. Any further delay by the Commission in acting upon the Rulemaking Petition exacerbates this violation.

Moreover, there is no justification for the Commission's delay because the Rulemaking Petition presents a purely legal question of which the Commission has been aware for decades. (See Statement of the Case, Section E, above.) The Commission has no discretion to operate beyond the confines of the authority granted to it by the Exchange Act. And addressing the purely legal question of the extent of that authority does not require significant fact-finding that would require diversion from the Commission's priorities or of its resources, nor does it require

application of any special Commission expertise. Thus, the Commission's adjudication of the Rulemaking Petition contrasts sharply with other instances in which this Court has declined to issue writs of mandamus where the administrative review involved the exercise of the agency's discretionary power or the agency proceedings in question allowed the agency to apply its special expertise. *See, e.g.*, *Sierra Club v. Thomas*, 828 F.2d 783, 797-99 (D.C. Cir. 1987). Further, any "benefits of agency expertise and creation of a record will not be realized if the agency never takes action." *In re Am. Rivers & Idaho Rivers United*, 372 F.3d at 418 (quoting *TRAC*, 750 F.2d at 79).

### F.   The *TRAC* Factors Support Issuing a Writ of Mandamus to Compel the Commission to Act on the Petition

In *TRAC*, this Court set forth the following six factors for consideration in determining whether to issue a writ of mandamus to compel agency action that has been withheld unreasonably:

> (1) the time agencies take to make decisions must be governed by a rule of reason; (2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason; (3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake; (4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority; (5) the court should also take into account the nature and extent of the interests prejudiced by delay; and (6) the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed.

*Am. Hosp. Ass'n v. Burwell*, 812 F.3d 183, 189 (D.C. Cir. 2016) (citing *TRAC*, 750 F.2d at 80). Many of the *TRAC* factors have already been addressed in the preceding argument, but the points are summarized again here.

**Length of delay, rule of reason.** This Court already has considered what the "rule of reason" and the APA's statutory command for agency action within a "reasonable time" demand; a "reasonable time" in which a federal agency must grant or deny relief requested in a rulemaking petition "is typically counted in weeks or months, not years." *In re Am. Rivers & Idaho Rivers United*, 372 F.3d at 419. Nearly three years have elapsed since the Rulemaking Petition was submitted, and there is no indication that the Commission has taken *any* action with respect to it.

**Consequences of delay and agency resources.** The issues addressed in the Rulemaking Petition are not a matter of "human health and welfare," and such analysis is inapplicable here because the statutory purview of the Commission relates solely to economic regulation. However, the fact that the Commission does not directly regulate issues concerning human health and welfare does not give it license to disregard the FAA by allowing unlawful rules that preclude private arbitration agreements like the MDRP, nor to disregard the APA by refusing to act on a rulemaking petition unless and until a court compels action.

Nor can the Commission credibly point to resource constraints as a basis for delaying a final decision on the Rulemaking Petition. The purely legal issues

presented in the Petition are not new to the Commission—it has been on notice since 1987 that it lacks statutory authority to override the FAA. And as former Commission Chairman Clayton conceded, the Commission has been considering the scope of the Commission's authority under the Securities Act to preclude arbitration agreements since at least 2012 but has intentionally avoided addressing it. A42-43. Deferring to the Commission's assessment of its priorities would amount to allowing the Commission to decide not to address its own unlawful behavior simply because it does not want to address it.

By contrast, additional delay significantly prejudices Thrivent and TIMI, because unless and until the Rulemaking Petition is adjudicated, they must comply with the unlawful constraints placed on their business and the negative impact caused by the Challenged FINRA Rules.

*Agency impropriety.* Although the Court need not find any impropriety lurking behind the Commission's lassitude, by its own admission the Commission and its staff are knowingly continuing to avoid addressing the issue of Commission authority to limit or preclude arbitration agreements. Further, given the Commission's position that it must only act when compelled by a court to do so, unless this Court intervenes the Commission will continue its practice of avoidance.

The Commission also appears not to be mindful of this Court's January 23, 2023 Order, which denied Thrivent and TIMI's initial petition for a writ of

mandamus, but did so "without prejudice to refiling in the event of significant additional delay." A159. The Commission has not indicated that it has taken any action with respect to the Rulemaking Petition to avoid "significant additional delay" in more than twenty-one months since that Order was issued. Moreover, the Commission has ignored Thrivent's subsequent inquiries regarding the status of the Commission's review of the Rulemaking Petition. A160; A238-239. The Commission has thus ensured the very significant additional delay about which this Court expressed forward-looking concern in its January 23, 2023 Order.

## II. AT A MINIMUM, THE COURT SHOULD RETAIN JURISDICTION

For the foregoing reasons, the Court should direct the Commission to respond to the Rulemaking Petition. At a minimum, however, the Court should retain jurisdiction to monitor the SEC's progress toward a response and order the Commission to provide periodic reports. This Court already has adopted this approach in similar circumstances. *See, e.g., TRAC*, 750 F.2d at 81; *In re United Mine Workers of Am. Int'l Union*, 190 F.3d 545, 556 (D.C. Cir. 1999) (collecting cases).

Here, the Court could require the SEC to explain its delay, estimate when it will respond to the Rulemaking Petition, and provide regular updates on its progress. Doing so will allow the Court to ensure that further delay does not frustrate judicial review, and might induce the Commission to finally act on the Rulemaking Petition,

just as a similar approach by the Third Circuit did in *In re Coinbase*.

## CONCLUSION

The Court should issue a writ of mandamus compelling the Commission promptly to issue a final decision with respect to the Rulemaking Petition. Alternatively, the Court should retain jurisdiction and order the SEC to estimate when it will issue a final decision and provide progress reports to the Court.

Date: October 31, 2024

Respectfully submitted,

/s/ P. Randolph Seybold
Andrew B. Kay
P. Randolph Seybold
VENABLE LLP
600 Massachusetts Avenue, NW
Washington, DC 20001
(202) 344-4000
(202) 344-8300 (fax)
akay@venable.com
rseybold@venable.com

Richard T. Choi
Ann B. Furman
CARLTON FIELDS, P.A.
1025 Thomas Jefferson Street, NW
Washington, DC 20007
(202) 965-8100
(202) 965-8104 (fax)
rchoi@carltonfields.com
afurman@carltonfields.com

*Counsel for Petitioners Thrivent Financial for Lutherans and Thrivent Investment Management Inc.*

# CERTIFICATE OF COMPLIANCE

This petition complies with the Court's Rules for "Petitions for Writs of Mandamus Alleging Unreasonable Agency Delay" set forth at page 19 of the Handbook of Practice and Internal Procedures, United States Court of Appeals for the District of Columbia Circuit ("Handbook"). This brief was prepared on a computer, and in accordance with the Handbook is limited to 7,800 words. (Handbook at 18.) This brief contains 7,283 words, excluding the following pursuant to Fed. R. App. P. 32(f): cover page; certificate of parties, rulings under review, and related cases; the corporate disclosure statement; the table of contents; the table of authorities; the signature block; the proof of service; any certificates of counsel; the Statutory Addendum; and the Appendix.

This petition complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and type-style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in 14-point font size and Times New Roman type style.

Date: October 31, 2024

Respectfully submitted,

/s/ P. Randolph Seybold
Andrew B. Kay
P. Randolph Seybold
VENABLE LLP
600 Massachusetts Avenue, NW
Washington, DC 20001
(202) 344-4000
(202) 344-8300 (fax)

akay@venable.com
rseybold@venable.com

Richard T. Choi
Ann B. Furman
CARLTON FIELDS, P.A.
1025 Thomas Jefferson Street, NW
Washington, DC 20007
(202) 965-8100
(202) 965-8104 (fax)
rchoi@carltonfields.com
afurman@carltonfields.com

*Counsel for Petitioners Thrivent Financial for Lutherans and Thrivent Investment Management Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that on the 31st day of October, 2024, copies of the foregoing

Petition for a Writ of Mandamus (Agency Action Unreasonable Withheld),

Appendix, and Statutory Addendum were served by courier upon the following:

Office of the Secretary
Attn: Vanessa Countryman, Secretary
U.S. Securities and Exchange Commission
100 F Street, NE
Washington, DC 20549

Office of the General Counsel
Attn: Megan Barbero, General Counsel
U.S. Securities and Exchange Commission
100 F Street, NE
Washington, DC 20549

/s/ P. Randolph Seybold